(No. 24258.— ■■■■■■■■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* NORMAN WEISS, Plaintiff in Error.

*Opinion filed December 15, 1937—Rehearing denied Feb. 2, 1938.*

GEORGE B. & ABRAHAM H. COHEN, (GEORGE B. COHEN, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, BLAIR L. VARNES, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, Norman Weiss, also known as Norman Plenn, was indicted in the criminal court of Cook county for burglary. He was tried by the court without a jury,

found guilty, and sentenced to imprisonment in the penitentiary. Weiss prosecutes this writ of error.

During the evening of February 23, 1937, the basement of an apartment building, located at 5144 Nelson street, in Chicago, was burglarized and twenty-six jackets, valued at approximately $160, stolen. The jackets were never recovered. John L. Hoffsted, who lived in the apartment on the first floor, used a part of the basement for the purpose of storing samples of men's sports-wear belonging to his employer, Frank Ditto. The samples were kept in cabinets especially constructed for that purpose. Hoffsted and his wife were absent from their home between 8 :20 o'clock in the evening of February 23 and 1 :00 A. M. of the following day. From Hoffsted's testimony it appears that when he departed the sample cases and the door leading to the basement were securely locked. As he was backing his car from his garage in the rear of the building into the alley, parallel with Nelson street, the witness related that he observed another car approaching at a high rate of speed; that he turned his own automobile to the right to allow it to pass; that the second car stopped about seventy-five feet from his car; that a man got out of the car, passed him, and, when opposite the rear entrance to the apartment building, looked down the areaway, turned and called to the occupant of the car, a woman, exclaiming, "Yes, they are home." The man, Hoffsted stated, was the defendant, whom he had seen in the front hall of the apartment building on a previous occasion three or four weeks prior to the burglary. The witness testified further that upon his return to the alley, after closing his garage door from the inside, the other car was still there; that his suspicion was not, however, aroused and that he drove away.

Frances Baker resided in an apartment on the first floor at 5142 Nelson street in the building next to Hoffsted's building. Her living room, considerably farther back from Nelson street than the front entrance to Hoffsted's build-

ing, faced a long courtway or lawn between the two buildings, affording an excellent view of the rear of Hoffsted's premises. The side hallway to the building leading to her apartment faced the Hoffsted building. There were lights at the entrance facing the courtway and also in the hallway. Mrs. Baker testified that from the vantage point of her living room, about 7:30 P. M. on February 23, she observed defendant, smoking a cigarette, cross the lawn and go into the hallway where he remained about three minutes; that he then walked over to the next building, came out five minutes later and again entered her hallway; that a woman crossed the lawn, joined him and then went in the back way of Hoffsted's building. Mrs. Baker added that after defendant entered the Hoffsted building the second time she saw a light in the basement, and that it was about a half-hour before she again saw him. The witness testified that the woman tapped a basement window, ran across the street and honked the horn of the car, an Oldsmobile, after which defendant came out of the building, jumped into the car and drove from Nelson street to the alley, but had nothing with him at this particular time. Later, the witness testified, she went into another room of her apartment and saw the same automobile parked in the alley and a woman sitting inside. A third time, she recounted, defendant went into the Hoffsted building and this time came out with a salesman's sample case, together with objects over his arm, went to the alley gate and threw the jackets into the back seat of the car.

Police officers Hall and Will, in response to a radio call, went to the rear of Hoffsted's premises at 10:00 P. M. where they saw a man whom they identified as defendant and a young woman sitting in an Oldsmobile car in the alley. The policemen, according to Mrs. Baker, arrived five minutes after she had seen defendant throw the jackets into the car. When interrogated by the officers, defendant explained his presence by stating that he and his companion,

who, he said, was his wife, were waiting for Hoffsted. Officer Hall testified that defendant gave his name as Edward Weiss, identifying himself by exhibiting a State automobile license made out in that name. Although the officers examined the back of the car, they neither looked into the trunk nor inspected Hoffsted's office in the basement. In obedience to their command defendant drove away. On Hoffsted's return he noted that his office was lighted and, upon investigation, found marks on the door leading to his office in the basement indicating it had been jimmied with a screw-driver. The locks on the door to the cabinet case containing the jackets had been removed, all the sample cases opened and one large case left open on a table. Defendant was arrested on February 24 and taken to the police station where he was identified by Hoffsted and Mrs. Baker. His companion was not identified.

Defendant, at the time of the trial, was twenty-eight years of age. He interposed the defense of an alibi, maintaining that on the evening of February 23, he, his wife and son, and a friend, Mrs. Lerman, attended a performance of a movie at a "Loop" theater, tickets for which he had purchased the previous day; that the three first mentioned left their home about 8:00 P. M. and Mrs. Lerman joined them on the way down town; that they parked the car, an Oldsmobile, owned by his wife; that they were in the theater from 8:45 until 11:00 P. M., or shortly thereafter; that they then repaired to a restaurant, after which he, defendant, returned for his car and discovered it was gone; that Mrs. Lerman took the child home while he and his wife went to the First District police station to report the theft of their car. The car was reported stolen about 12:30 A. M. on February 24. It was not recovered until February 27. Defendant testified further that on February 24, he exhibited a program and ticket stubs to police officers Heuttig and DeLaurentis at his home; that one of the officers took them and that he never saw the program and stubs after-

wards. Mrs. Lerman, who had known defendant's wife for several years, corroborated defendant's testimony in essential particulars. On examination by the court officer Heuttig stated that defendant showed him a program but no stubs, and, further, that there was no reference to stubs in the conversation with defendant. John DeLaurentis corroborated him, adding that the folder or program given to them by defendant for examination was left in his apartment.

Additional facts and circumstances are disclosed by the record. Mrs. Baker saw defendant smoking a cigarette in the hallway of the building where she lived. She later picked up the stub of a "Kool" cigarette which he dropped and gave it to Hoffsted the next morning. The latter preserved the stub and delivered it to the sergeant of police at the station. The cigarette stub was admitted in evidence. Numerous stubs of the same kind of cigarettes were also found in defendant's car when it was recovered on February 27. Defendant smoked several brands of cigarettes, it appears, including Kools.

Officer Edward O'Donnell testified that in the course of a conversation with defendant in his cell on the morning of February 25, the latter told the witness he was employed by one Miller at 646 South State street. O'Donnell went to Miller's place of business to verify the statement. Thereafter, he informed defendant that Miller said defendant's wife had called upon him earlier in the morning of February 25, requesting that he, Miller, say that defendant had been employed by him. When apprised of Miller's answer, defendant said, "I had to tell you something." Upon the trial defendant denied informing O'Donnell that he had worked for Miller, his version being that, answering an officer's inquiry if he knew anyone in the leather goods business, he replied he was acquainted with Miller. O'Donnell identified a screw-driver discovered in defendant's car at the garage on February 27 and taken to a police station where it was marked for identification. Over objection,

he was permitted to testify that he went to Hoffsted's home and fitted the screw-driver into the marks made in the doors of the office in the basement and the cabinet. Defendant moved to strike the testimony relative to finding the screw-driver and other tools in the car in the garage, on the ground that there was no proof he owned or ever possessed them. Defendant did not disclaim ownership of the screw-driver, merely stating that the automobile was equipped with the usual tools.

To obtain a reversal of the judgment of conviction defendant contends that the indictment was substantially defective and not proved. The indictment charged the defendant with having entered the home of Hoffsted with intent to steal personal property of Hoffsted and Ditto, but with having stolen only the property of Ditto. The *gravamen* of the offense of burglary as defined by the Criminal Code is the intent with which the entry of the building was made. (*People* v. *Gillespie,* 344 Ill. 290; *People* v. *Mendelson,* 264 id. 453.) Defendant contends that proof of intent to steal the property of both Hoffsted and Ditto was wanting. Hoffsted's home was broken into, as charged, and the proof discloses he had property of his own and also property belonging to his employer in his possession. Although intent is a matter of fact and cannot be implied as a matter of law, criminal intent may be shown by circumstantial evidence. (*People* v. *Martishuis,* 361 Ill. 178.) Proof of a breaking into Hoffsted's home and theft of the jackets amply disclosed intent to steal property in Hoffsted's home, whether his property or another's. The additional allegation that property of Ditto was stolen is sustained by the evidence. It was not charged and, hence, unnecessary, to prove that the property actually stolen was the joint property of Hoffsted and Ditto.

Defendant insists that the trial judge erred in failing to rule on the objections to the admissibility of the screw-driver in evidence and to the testimony concerning the fitting of

it into the marks made on the doors. The record discloses that defendant did not object to the failure of the court to rule on his objection nor except to the refusal of the court to act. He cannot now complain of the court's action in this regard. (*Lipsey* v. *People, 227* Ill. 364.) Moreover, this evidence was admissible as a circumstance, since the screw-driver used in opening the door fitted exactly in the marks made at the time the door to the basement was opened and the cabinet rifled. The fact that the screw-driver and other tools were in defendant's car when recovered on February 27 tended to show that they belonged to the owner of the car or its driver.

Complaint is also made that the trial judge did not afford defendant's counsel an opportunity to present a written motion for new trial prior to pronouncing sentence. Upon the conclusion of the testimony on April 6, 1937, the court announced its finding of guilty. Defendant immediately moved for a new trial and the motion was overruled. Leave to file a written motion for a new trial was sought and granted. While defendant's counsel was still in the court room defendant's bond on a prior indictment for the same burglary was forfeited. On April 7, the cause was advanced for hearing in the presence of the defendant, without his attorney, and sentence pronounced. Thereafter, defendant, on April 8, and again on April 13, was given additional time to file his written motions. They were not filed until April 19 and no ruling on the motion for new trial was obtained. Defendant asserts that prior to the day fixed for filing this motion he had been sentenced and incarcerated in the penitentiary. Under the circumstances narrated, a remandment of the cause for a new trial is not warranted. Here, the case was tried by the court without a jury, the few issues of law were clear and, from the testimony presented, the trial judge who had the advantage of seeing and hearing the seven witnesses for the People, the defendant and his sole witness, Mrs. Lerman, entertained

no doubt of defendant's guilt. The record fails to make any showing of prejudice because of the lack of opportunity for extended oral arguments on the written motion for a new trial. Nor does the motion itself purport to present any fact not preserved by the record. The contentions now urged for reversal upon this review are properly before us, and defendant's rights have been adequately, if not meticulously, protected. *People* v. *Krotz,* 341 Ill. 214.

The concluding contention is that the evidence fails to support the judgment. A burglary of Hoffsted's premises was established and four witnesses, Hoffsted, his observant neighbor, Mrs. Baker, and two police officers, identified defendant as the man each of them saw in or about the scene of the burglary at the time it was perpetrated. The testimony of the officers and Mrs. Baker concerning the type of automobile was in accord. The foregoing circumstances, together with others previously narrated, were sufficient to warrant the rejection of the alibi testimony. Rarely can a burglary be proved by direct evidence of the actual breaking and entry. The inference of guilt, in most cases, must necessarily be drawn from other facts satisfactorily established. (*People* v. *Francis,* 362 Ill. 247.) Alibi is an affirmative defense, and where the *corpus delicti* is proved, together with evidence tending to show the guilt of an accused, the burden is on him to establish an alibi interposed as a defense, although upon the whole case his guilt must be proved beyond a reasonable doubt. (*People* v. *Overbey,* 362 Ill. 488; *People* v. *Kerbeck,* id. 251.) Defendant's car was at the place of the crime at 10:00 o'clock in the evening. He was not then taken into custody. It was, of course, entirely possible for his car to have been stolen later in the evening at another place as appears from the record. The testimony of Mrs. Baker and the police officers who found defendant in the alley is conclusive that defendant was not at the theater during the entire time, to put it mildly, claimed by him. The defense of alibi was predicated on

defendant's presence at a movie at the time of the alleged offense. While we take judicial notice of the attendance of thousands of persons nightly at such performances, the court is also well aware of the fact that the use of the movie for the purpose of an alibi is frequently resorted to.

The determination of the credibility of the witnesses and of the weight to be accorded to their testimony was lodged in the trial judge in this case. There was ample evidence in the record to establish defendant's guilt of the crime of burglary. We are not warranted in disturbing the conviction merely because the evidence is conflicting.

The judgment is affirmed. *Judgment affirmed.*