THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE PERRY, Defendant-Appellant.

(No. 54347;

First District—May 28, 1971.

Michael P. Toomin, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and James Veldman, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE ENGLISH delivered the opinion of the court:

### OFFENSE CHARGED

Burglary. Ill. Rev. Stat. 1967, ch. 38, sec. 19—1.

### JUDGMENT

After a bench trial, defendant was found guilty and given a sentence of 5 to 10 years.

### CONTENTIONS RAISED ON APPEAL

1. Defendant was not proven guilty beyond a reasonable doubt.

2. The element of control of the subject premises as alleged in the indictment was not proven beyond a reasonable doubt.

### EVIDENCE

*Carolyn Wilson,* for the State:

She is 21 years old and lives with her husband and mother at 1218 South Troy. On August 5, 1968, at approximately 2:30 A.M., she was awakened to find a man standing in the doorway of her bedroom. She yelled and called to her sister Martha, who was on the couch in the dining room. She heard running through the house and somebody went out the back door, which was locked before she had gone to bed. Looking out the front window, she saw policemen coming up the front stairs. She told them that someone had been in the apartment. She noticed that a living room screen had been removed and was on the front porch. One policeman looked through the apartment and back porch and the other policeman went to the third-floor vacant apartment where he found defendant. She saw defendant being brought down to the second floor.

She had known defendant for over 5 years, and used to be friends with his sister. He had been to her house before. She had given him permission to come over and visit before, but not on this particular night. Defendant had visited late at night on previous occasions, sometimes coming over after 10:00 o'clock. Her husband was at work on the night in question. She did not recall seeing defendant a couple of nights before this incident.

*Martha Lesure,* for the State:

On the night in question, she was at 1218 South Troy where her mother, sister, and nephew live. She had been sleeping on the couch in the dining room when she heard her sister hollering at 2:00 A.M. A man ran past her and knocked her over a table as she was getting up from the

couch. She ran over to a light, but by the time she got the light on, the man had gone out the back door, leaving it open. The door had been locked before she went to bed. The police came in the front and one of them checked the house. When she went to the back porch, the other officer had defendant there. She recognized defendant as someone she had known for about 6 years. His sister and her sister had gone to school together. So far as the witness knew, defendant did not go out with her sister.

*John Smith,* for the State:

He is a police officer. On August 5, 1968, about 2:00 or 2:30 A.M., he and his partner drove to 1218 South Troy. His partner went to the rear while he remained in front where he saw defendant trying to climb out a second-floor window. When he called to him to stop, defendant went back in the window. He then saw complainant at the window and told her to open the door. He was searching the apartment, and was on the second-floor porch when he saw defendant being brought down from the third-floor porch, within seconds after he had been taken into custody. He saw no personal property in defendant's possession.

*Willie Perry,* in his own behalf:

He is 23 years old. He was arrested on the second-floor back porch of 1218 South Troy on August 5, 1968. He was not on the third floor. He had gone there at about 2:00 A.M. with the intention of seeing Carolyn. He did not get a chance to knock on the door before being arrested, and did not get into the apartment. He did not call Carolyn before going there because she did not have a telephone. He had last seen her a few nights before.

*OPINION*

The indictment charges defendant with the offense of burglary:

> "in that he, without authority, knowingly entered into the dwelling house of Kathryn Wilson with the intent to commit the crime of theft therein, in violation of Chapter 38, Section 19—1, of the Illinois Revised Statutes 1967."

■■ Burglary is defined by the statute as the knowing entry without authority into a building with intent to commit therein a felony or theft. As the charge in this case specified defendant's intent to commit theft, the proof must support that allegation. (*People v. Soznowski,* 22 Ill.2d 540, 543.) While the evidence may be said to have shown defendant's presence in the apartment while its occupants were asleep, thus establishing an opportunity for theft, there is no proof that defendant stole or attempted to steal anything whatsoever. Intent to steal, however, may, and often must, be proved by circumstantial evidence. As was stated in *People v. Johnson,* 28 Ill.2d 441, 443, upon which the State relies:

"* * * *in the absence of inconsistent circumstances,* proof of unlawful breaking and entry into a building which contains personal property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary. Like other inferences, this one is grounded in human experience, which justifies the assumption that the unlawful entry was not purposeless, and, *in the absence of other proof,* indicates theft as the most likely purpose. (Emphasis supplied.)"

In the case of *People v. McCombs,* 94 Ill.App.2d 308, 313, evidence of the defendant's prior relationship with a member of the household and his presence in the bedroom she ordinarily occupied was held to raise an inference that at the time of entering into the building the defendant intended to resume such relationship, and this circumstance was held sufficient "to negate the inference of the intent to commit a felony."

There are, in the instant case, both inconsistent circumstances and other proof which, in our opinion, negate any inference that defendant intended to commit the crime of theft. The circumstance that defendant was discovered at the door of complainant's bedroom (rather than in the living or dining rooms where objects of theft would more likely be found), when coupled with the fact that defendant knew complainant and had previously been invited to visit her late at night, reasonably raise an inference of some other inconsistent motive for his presence, and leave us with serious doubt that an intent to commit theft was uppermost in his mind.

■■ We conclude, therefore, that defendant was not proven guilty beyond a reasonable doubt. In view of this decision, we need not consider defendant's other contention.

The judgment is reversed.

Judgment reversed.

DRUCKER and LORENZ, JJ., concur.